RIESS v. MULTI-SELECTO PHONOGRAPH, INC.

1. CORPORATIONS—BILLS AND NOTES—CONSIDERATION.
Where, in action on note against corporation, evidence shows that it was without consideration, judgment was properly entered for defendant.

2. SAME—PLEADING—COMMON COUNTS.
Although note sued on was not executed by any duly-authorized officer or agent of defendant corporation, recovery could be had under common counts where indebtedness was established.

3. ACCOUNT STATED—CORPORATIONS—INTENTION.
No recovery could be had on alleged account stated, where it was not authorized by defendant corporation, and was not intended to be such by either party.

Appeal from Kent; Brown (William B.), J.   Submitted January 28, 1932.   (Docket No. 128, Calendar No. 36,166.)   Decided June 6, 1932.

Assumpsit by John J. Riess, executor of the estate of Robert W. Brown, deceased, against Multi-Selecto Phonograph, Inc., a Delaware corporation, on promissory notes and an alleged account stated. Judgment for defendant.   Plaintiff appeals.  Reversed, and judgment ordered for plaintiff on one promissory note.

*George C. Brown,* for plaintiff.

*Rodgers & Dunn,* for defendant.

North, J.   This is a suit in assumpsit brought by the executor of the estate of Robert W. Brown, deceased, against the Multi-Selecto Phonograph Company, a Delaware corporation, the same being the successor to the Auto Indicator Company, a Michigan corporation.   In the circuit court the case was heard by the circuit judge without a jury and judgment rendered in favor of defendant.   Plaintiff has appealed.

For convenience we hereinafter refer to Robert W. Brown as plaintiff.   He died March 17, 1927.   The declaration contains three special counts, and also the common counts.   The first two counts are on separate promissory notes and the third count on a so-called account stated.

The promissory note declared on in the first count bears date July 18, 1922, for $2,500 payable one year after date to Robert W. Brown with interest at six per cent. per annum.   This note is signed "Auto Indicator Co.   Robert W. Brown, V. Pres., V. I. Cilley,

Sec.-Treas." As indicated by the above signatures, both plaintiff and Mr. Cilley were officers of the Auto Indicator Company; and Joseph Renihan was its president. In 1921 a stock selling campaign was prosecuted incident to which plaintiff appears to have been very active. He seems to have had faith in the future of the company, and was instrumental in financing its' affairs. Incident to his activities along this line, he borrowed $2,500 from Mr. Renihan, to whom he gave his note for that amount. The proceeds of this loan, as well as other funds of plaintiff, were advanced to the company to be used in its business. On November 28, 1921, a settlement was entered into between plaintiff and the Auto Indicator Company, incident to which plaintiff gave the following receipt:

"Received of Auto Indicator Company common stock certificate No. 433 for 4,000 shares of the capital stock of the Auto Indicator Company, and certificate No. 434 for 1,000 shares of the capital stock of the Auto Indicator Company, which is payment in full for commissions, cash advanced, and every other obligation to date."

On July 18, 1922, Mr. Renihan wrote plaintiff in regard to certain sums of money which he had loaned to plaintiff, including the $2,500 above mentioned. Thereupon plaintiff seems to have been under the impression that this item of $2,500 was overlooked at the time of the settlement of November 28, 1921. Without the knowledge of any of the other officers of the company, plaintiff took the matter up with the bookkeeper, who caused the following entry to be made in the books of the company:

"$2,500. * * * Commission on stock To R. W. Brown. notes payable $2,500. Error in closing R. W.

B. account, December 30, 1922.   J. Renihan advanced R. W. B. $2,500.   R. W. B. guaranteed same, but was not included in final settlement to company, and company still owes R. W. B. $2,500.''

In this connection, the note declared upon in the first count was prepared by the bookkeeper and signed by plaintiff as vice-president of the defendant company.   While the testimony is somewhat uncertain, we think the record indicates that the signature of Mr. Cilley as secretary-treasurer was written on this note by Mr. Cilley; but it appears from his testimony that he was accustomed to executing papers at the request of the bookkeeper and often without knowledge as to the details of the particular transaction.   Incident to this particular note, the bookkeeper testified:

"*The Court:*   And when you made this note, it was your own understanding that was his due?
"*A.* I understood from what he told me that he had it coming to him.
"*The Court:*   Well, regardless of what he told you, was it your understanding of the books that it was?
"*A.* Well, that is what he gave me to understand. But you see, I didn't know all that had transpired. I understood he had it coming, and I didn't know that he had canceled everything through the stock transactions.   I tried to keep accurate books.   I can't say I consider that transaction accurate, because I made an error there.   I know that.   When I closed the books, I should have closed that.   I left it open with the $2,500, and I should not have done that. * * * No, all I testify is that it was a direct error on my part in closing that account.   * * *   My understanding of the settlement of 1921 that it was to wipe out all indebtedness that the company owed Father Brown.''

A careful review of the record satisfies us that the $2,500 which plaintiff borrowed of Mr. Renihan was included in the November, 1921, settlement between plaintiff and defendant, and therefore this note is without consideration. Having arrived at this conclusion, it is unnecessary to give consideration to the further defense urged that because the note was not executed by the proper officers of the defendant it is not a binding corporate obligation.

Plaintiff's second count is based on the following promissory note:

"Grand Rapids, Mich., June 9, 1925.

"Ninety days after date for value received we promise to pay to the order of Robert W. Brown $2,778.85—Twenty-seven hundred seventy-eight and 85/100 dollars with interest at the rate of six per cent. per annum.     *     *     *

(Signed) "Auto Indicator Co., V. I. Cilley, Sec.-Treas. Joseph Renihan, President."

The circumstances leading to the giving of this note may thus be briefly outlined: On July 16, 1921, the defendant's 30-day note secured by collateral belonging to plaintiff was used to obtain a bank loan of $3,000 for defendant. This first note was renewed and later the loan by use of the same collateral was secured from another bank, the proceeds of this loan being used by the defendant company to pay its obligation to the first bank. Later (June 9, 1925) plaintiff desiring to repossess his collateral paid the bank on defendant's note $2,778.85. The balance of the bank's loan ($520) was paid by defendant; plaintiff was permitted to withdraw his collateral; and defendant thereupon gave plaintiff the note on which he seeks to recover in the second count.

The defense is urged that this note was not executed by any duly-authorized officer or agent of the

defendant corporation. Conceding such to be the fact, the indebtedness being established, recovery may be had under the common counts in plaintiff's declaration. Defendant's contention that this item was covered by the November, 1921, settlement cannot be sustained, because at that time this was a debt due from defendant to the bank. It was subsequently paid by plaintiff to enable him to repossess his bonds which he had deposited as collateral to defendant's note. This was more than four years after the 1921 settlement, and therefore it clearly was not included therein. Under the record plaintiff should recover for this item.

The third count in plaintiff's declaration alleging an account stated is based upon a memorandum prepared by defendant's bookkeeper, reading as follows:

"This is to certify that the account between the Auto Indicator Company of Grand Rapids, Michigan, and the Pocket Radio Sales Co. of Grand Rapids, Michigan, have balanced their account to date, that is January 7, 1924, and have come to the following conclusion:—

"Robert W. Brown doing business as the Pocket Radio Sales Co. advanced on contract $8,131.36 and took out merchandise to the amount of $1,837.68 which leaves a balance of $6,293.68 on which we allowed him a credit of $750 covering 50 pocket radios which we agree to take back, therefore there is a credit due Robert W. Brown of $7,043.68.

(Signed) "Auto Indicator Co.,
"By I. R. Lewis."

Plaintiff entered into a partnership with another man, and the two, operating as the Pocket Radio Sales Company, in 1923 contracted to purchase of defendant and undertook to sell a large number of pocket radios that the defendant manufactured. The

venture proved to be a losing proposition for all concerned. The memorandum above quoted pertained to this phase of the business relations of these parties, but it was not intended to constitute an account stated. At plaintiff's request this memorandum was prepared by the defendant's bookkeeper, Isabel R. Lewis. She did this and signed the company's name thereto without the knowledge of any of the officers of the defendant corporation except plaintiff. Both plaintiff and defendant abandoned the attempted manufacture and sale of the pocket radios as a bad venture. Neither thereafter during plaintiff's lifetime made any claim against the other. Plaintiff had advanced to defendant a substantial sum of money to be used in the manufacture of pocket radios. He lost practically all of this investment. On the other hand, defendant also lost heavily by reason of plaintiff's failure to carry out his sales contract. Defendant urges its damages thus sustained as a counterclaim in this case. The record is convincing that each considered the venture closed, and neither asserted a claim against the other; but instead they mutually canceled obligations and abandoned the undertaking. Concerning this phase of the litigation, the secretary-treasurer of the defendant company testified:

"*Q.* The canceled contract was what?

"*A.* Well, he just quit selling, that is all; he couldn't do any more, and that is all there was to it.

"*Q.* So you canceled the contract?

"*A.* One account was to offset the other; we charged his account off the books."

Of this the circuit judge correctly made the following disposition:

"That the writings set forth in plaintiff's declaration as exhibit 'C' (the so-called account stated) was

not authorized by defendant company, was not intended by either party to be an account stated between them and there is no evidence to sustain recovery by plaintiff against defendant for the items or amounts stated in this writing.

"There is no evidence to sustain any claim made by defendant against plaintiff under its plea of setoff and recoupment."

The case is remanded to the circuit court, where the judgment will be set aside and a judgment entered for plaintiff for $2,778.85, with interest from June 9, 1925, computed at six per cent. per annum. Plaintiff will have taxable costs of both courts.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.